Thank you, Your Honor. Once again, may it please the Court, I'm Robert Jobe, and I'm representing the petitioner Christopher Yeoh. This is the end of a long day, so let's get to the heart of this. How is what happened to your client's rise to the level of persecution? I'm not even persuaded by the past persecution argument, Your Honor. I'm not going to fight that fight. I think the issue here is what's a court supposed to do when an immigration judge simply ignores key pieces of evidence, evidence which really could determine the outcome of an asylum claim, because I think that's what happened in this case. Who's the judge here? Judge Handler. He's no longer in San Francisco. I think he's in New York now. But when an immigration judge says there's no evidence to support a certain proposition and the record shows that there's plenty of evidence to support that proposition, what this Court should do is vacate and remand and tell the judge to take another look at it. That's precisely what happened in this case. For example, and this is on page 72 of the administrative record, the judge's decision, the judge said there's, quote, no evidence that the Singaporean government is actively seeking out and prosecuting homosexual relationships or individuals engaging in those relationships. That's just wrong. If you look at page 292 of the administrative record, which is an academic article written by a professor from the National University of Singapore, that says that while section 377 of the criminal code is, quote, difficult to enforce, section 377A, which punishes any male person who in public or private commits any act of gross indecency with another male, is, quote, regularly enforced. The same article says on page 293, quote, homosexual arrests based on entrapment are a regular feature of police work. Well, what he says is there's no evidence at all presented that the government of Singapore is prosecuting homosexuals for private acts. That's the second part of that sentence. I mean, let me just go turn to that precise language. But he says two things. I mean, beginning on page 73, there's no evidence that the government of Singapore is actively seeking out and prosecuting homosexual relationships. He goes on to say there's no evidence of them prosecuting private acts, and I'll come to that in a second. But on this point, it's just wrong. If you look at also page 225 of the administrative record, that report from the International Lesbian Gay Association says, quote, since the late 1980s, police swoops on homosexual haunts have been routine. And it goes on to say, again on page 225, quote, the largest number of arrests for homosexual activities is initiated by police acting as decoys. Most are convicted under section 354 of the penal code for an offense called molest, which is the use of criminal force to outrage the modesty of a person. But what that is is agents posing as decoys, essentially they arrest their victims the moment they're touched in any way. If you look at page 315 of the administrative record, there's an example there. This is a man that was jailed for six months after he acknowledged touching the buttocks and the chest of an undercover police officer. On page 360 of the administrative record, and this is interesting because this is a document that was prepared by the Immigration and Naturalization Service. You know, to assist the Immigration Service in adjudicating asylum claims, they have their own research center. This is a document prepared by the INS Research Center, and it says down there at the bottom of that page. Which page do you want to show? On page 360, Your Honor. Plainclothes policemen pose as decoys and arrest gay men who approach them. This offense carries a jail term of up to two years of fine. And you think that's inconsistent with his statement and that he didn't mean to be just talking in general about private acts. Yes. He made three. Suppose he was. Suppose we sent it back. And he says, well, all I meant was that they're not prosecuting private acts. They're only prosecuting public acts. And I don't consider that to be persecution of a particular social group. It's simply prosecution of public sexual acts. Then would we have upheld him or not? No. See, he did go on to say that there's no evidence that there are. But tell me why we wouldn't uphold that, why that wouldn't be the outcome. See, I think what the evidence shows is that the Singaporean government is attempting to drive gay culture underground. And it's attempting to prevent gay men from essentially coupling up. And what that section 225 or page 225 of the administrative record, what it says, what it shows, is that, I mean, first you need to sort of look at the context. We're talking about a situation where gay men literally are driven underground. The government bans the media from publishing anything at all, not only, you know, homosexual pornographic images, but the government bans the media from publishing anything at all that portrays gay people in a positive light. On top of that, it refuses to issue permits to gay people who are organized. But ultimately, I mean, it seems to me the underlying legal question here is about whether this is worth a remand, is whether it would be persecution against a particular social group to prosecute people who engage in public sexual acts if you don't prosecute people who engage in private sexual acts. And we would need to know that to know whether the remand's worth anything. And I don't think you answered that question. But my point on that, Your Honor, and I'm trying to build up to it. I mean, in other words, you're explaining why this is a very unpleasant place for homosexual people. My point on that is that gay men are forced to – they're forced underground. It's not easy to just go out and find another partner. And when they do, there are these areas where gay men go and they – it's a cruising area. You know, they go and they look for other men. And hopefully, they're not going to have sex in a park. They're going to take them home. But they never actually get the opportunity to do that because what happens is the Singaporean authorities, they send out these decoys. And, you know, on page 292 or page 293 of the record, the evidence shows – Unfortunately, does this not happen in the United States anymore? Does Lawrence impact this at all? Does the Lawrence case impact? Absolutely. It does? Because Lawrence shows that, you know, gay sexual conduct is a right. But I thought that Lawrence specifically did not cover the question of whether prosecuting people for engaging in homosexual acts or any sexual acts in public was a problem. In public, of course. But that's the way the immigration judge is framing this decision. But what I'm trying to say is that these gay men are never going to have the opportunity to have gay sex in private because what the Singaporean government is doing – and if you look at page 225 of the record, it shows it pretty clearly. It's intercepting them. It's preventing them from coupling. Because what they do is they go to the parks. They pose as a gay man. And as soon as there's any sort of sexual – not even touching. I mean, page 225 makes clear if there's any even signaling that there's going to be a liaison that occurs. Not in the park. You know, these men – it's not at all clear that they're going to be having sex in the park. If they even touch one another, the chest, they're going to be arrested and they're going to be taken in and they're going to be, under Singaporean laws, they're subject to two to six months in prison and a caning. And that's not for having sex in public. That's for making a pass at another man in a public place. And that's the difference. I mean, these people are not being arrested for effectuating sexual conduct in a park. They're being arrested because they're attempting to find a sexual partner in a public place. And that's altogether different. And because of that, it's true, it would be hard for us to prove that they're breaking into people's homes and they're, you know, spying on people and arresting them in their own beds. But that's not what they're doing. What they're doing is attempting to prevent them from ever getting into their own beds because they're arresting them and sending them to jail as soon as they make any sort of sexual pass at another man. So is – and this is not meant to be rhetorical – but is what your client really saying is that the activities he could freely engage in in Orlando, Florida, he can't engage in in Singapore? Yes, that's true. I mean, he can't engage in – he can't be a gay man freely in Singapore because part of being a gay man is having sex with other men and the law prohibits that. And the Singaporean authorities go out of their way to prevent people from coupling up. The other thing that I want to say on this point, Your Honor, because I think it's – this goes back to what we were saying before about how to apply the substantial evidence test. And again, it seems to me that if the immigration judge makes statements of fact that are just clearly wrong, the case needs to go back. Well, that may be, but I'm just trying to figure out what the point of going back would be. Right. But another statement that he made – and this is on page 72 of the administrative record – he says there's no evidence that the government of Singapore enforces its laws unequally or selectively against homosexuals. There's just – that's completely contradicted by the evidence of record. The evidence of record – this is on page – let me find the citation for you. On page 292, the unnatural offense code is broad enough to include anal intercourse between heterosexual couples and between homosexual couples. However, gay males are singled out as subjects of the law. Page 292. Then, obviously, there are laws that prohibit pornography, but the laws that deal with gay pornography extend well beyond anything that we could consider pornographic. It bans any materials that portray homosexuals in a legitimate – as having a legitimate or acceptable lifestyle. Page 227. Gay people can't even organize. I mean, talk about not being – you know, applying the law equally. Gay people – anybody in Singapore who wants to have a club or association of more than ten people, you need a permit. The problem here is the very limited nature of the asylum laws. Of course. Which is that they only cover persecution. Of course. And they don't cover, as I understand it, interference with public assembly and – Precisely. But my point, Your Honor, is that if you look at this record and the way the Singaporean government sorts – really attempts to drive gay culture underground, it leaves gay men in the position of having to go out into these cruising areas to find a partner. And then when they do that – because, you know, you can't use the Internet there. There are no newspapers that advertise gay bars. They raid the gay bars. So when they go to one of these cruising places and they make a pass at a man – I'm not talking about having public sex. They make a pass at another man, they're subject to arrest. And if they are arrested under this section 354, the typical punishment – and this is set forth on page 225 of the administrative record – the typical punishment for that is two to six months in prison and a caning, three strokes of the cane. That's persecution. Okay. We'll give you a little time for rebuttal. Thank you, Your Honor. Mr. Nichols? Thank you, Your Honor. Carl Nichols again on behalf of the Respondent. Can you answer a question right off? And do you agree that the immigration judge said there is no evidence on a number of occasions and there was evidence? And if that's correct, why shouldn't we send it back because the decision and opinion are unreliable? Or is the government's position that they're assuming that that's correct, that it's harmless error because of the issue of persecution? I think it's fair to say that there are a few statements in the administrative – sorry, the immigration judge's opinion that are contradicted at least in part by the record. And counsel on the other side identified one. But can I get to an anterior point, though? And that is, this is a new argument. What Petitioner is arguing now is not that if looking at the record as a whole, the Petitioner has established a well-founded fear of persecution, but that the mere fact that the IJ made one or two errors is enough to require a remand. And I just don't think that's correct. And why? There's no support for that? Hasn't this court considered, not only in these types of cases, but let's say social security cases, where there's not enough in the record to establish a decision that there's no evidence, that that undermines the decision and the opinion. And it's sent back because these issues always are so significant. No, I think the relevant question is, has the Petitioner established that no reasonable fact finder could find that he lacks a well-founded fear for future persecution? So what you're saying is even if there is evidence that there's inconsistencies, that in fact there was evidence when the IJ said there wasn't, that it's circular and we go back to the question of whether or not there's sufficient evidence to establish persecution, so it's harmless error? Well, it's something akin to harmless error. I mean, you have to look at the IJ's opinion as a whole. And there's a couple points here that I'd like to stress. First, probably the point that Petitioner's counsel points to the most, which is the statement that there is no evidence that the government of Singapore enforces its laws unequally or selectively against homosexuals, that is in a discussion of the past persecution part of this case, which now Petitioner has given up on. We are now in a world that is only about establishing a well-founded fear for future persecution. So in essence, whatever was said with respect to past persecution is arguably irrelevant, but at the very least, Petitioner's no longer pressing that claim here. The IJ did have in the record, for example, information from the International Lesbian and Gay Association that basically said they have these laws, but if people restrict their behavior to private acts, they're not prosecuted against, correct? That's right. And some information that at least one appellate judge in the Singaporean system had tossed out one of these undercover stings. Yeah, and if I could, I'd like to go through some of the record evidence that I think could never require this Court to conclude that a reasonable person must have said that the Petitioner has a well-founded fear for future persecution, and I'll just tip through them. State Department report, Country Report 2002. Singapore generally respects human rights. That's Administrative Record 137. And the only place where the State Department mentions homosexuality in Singapore is with respect to First Amendment organizational rights. There's no claim in the State Department report that Singapore is targeting homosexuals. They don't say the opposite either. No, they don't, but the State Department often does when there is such evidence. GayTravelClub.com, a statement about traveling to Singapore. This is a document the Petitioner relied on, put in the record, Administrative Record 263. This is Gay Travel Club, and what they're telling people is, is it safe to travel places, and when you travel there, what should you worry about? Singapore policy is to, quote, live and let live. A senior minister was quoted as saying that Section 377, one of the two penal code provisions, is not used to prosecute consenting adults. And another minister is quoted as saying, quote, whatever two consenting individuals do behind closed doors is their business. Again, Administrative Record 263. Another document. Kagan. What about this issue that counsel raised about essentially cruising? I mean, public sex acts are one thing. I mean, that's obviously not a separate, not an issue, but what about things that aren't public sex acts that are being prosecuted? Is that true? Well, a couple things. Can I support that? First, there's no record evidence from what I can tell that mere cruising and being caught for cruising results in something like caning or something beyond discrimination and harassment. That's the first point. The second point is I don't think this Court should be prepared to say that particular people have a particular right of how they go about meeting other people. What's clear is that in Singapore, from this record, that you can have a private homosexual relationship. You can have a homosexual relationship that's public so long as you have sex in private and you will not be persecuted. That is clear. And so what Petitioner can do is he can go back to Singapore. He can be an openly gay man so long as he doesn't cruise. He can have a homosexual relationship, have sex in private. There's no record evidence to suggest that if he does those things, but so long as he doesn't cruise, he won't be persecuted. I mean, another document, World Legal Survey, which, again, prepared by the International Lesbian and Gay Rights Association, says Section 377 of the Penal Code is applied mostly in non-consensual heterosexual cases and Section 377A is, quote, used to convict same-sex acts in public settings such as in a parked car and open-space parks. Administrative Record 225. There's more. Sending more in post. Petitioners rely on this article from May 28, 2000. Quote, In practice, the authorities turn a blind eye to discreet gay bars and nightclubs. And finally, the report of the Bureau of Citizen and Immigration Services. This is Administrative Record 361. The treatment of homosexuals, quote, has improved, end quote, and goes on to say at 361, that owners of nightclubs, not patrons of nightclubs, but actually owners of nightclubs that cater to gays have not been subjected to open harassment. So, again, I'll go back to my point before, and that is to say the petitioner is free, it's clear from the record, or at the very least, given the standard of review, a reasonable fact finder would not be compelled to find the contrary. The petitioner is free to go back to Singapore. He's free to have a homosexual relationship. He's free to engage in homosexual acts in private. The only thing that petitioner is now relying on is petitioner's inability to prove. Because the record evidence I just read to you is that, as a general matter, the police are not targeting even gay clubs. Given the totality of the record evidence, Your Honor, I simply do not believe that the petitioner can establish that he has a well-founded fear of persecution if he were to return to Singapore. And as petitioners made clear, they have given up on their past persecution claim. Thank you very much. Thank you. Counsel? I absolutely agree that this Court can't dictate the result unless the evidence is so compelling that no reasonable person could fail to agree with the board. That's not my point. My point is simply that before we even review for substantial evidence, we need to make sure that the agency's considered the evidence. This Court has an important role in ensuring that the immigration judges actually consider the evidence. It's not appropriate for this Court to be reviewing the evidence in the first instance. And essentially, that's what the government's asking that you do. The immigration judge ignored the evidence. He said three times that there's no evidence for certain propositions where there's plenty of evidence. And now the government's coming in and saying, well, despite the fact that the judge, the fact finder, who's obliged to make the determination in the first instance, ignored that evidence. We want you to review the evidence and decide in the first instance. The one that you're pointing at is there's no evidence that the government enforces as far as unequally or imposes punishment unequally or selectively. And then the statement that there's no evidence that the government of Singapore is actively seeking out and prosecuting homosexual relationships. What's the third? The third one is no evidence that they go after private conduct. Because my position is, Your Honor, that they do target private conduct, but what they do is they target it before that private conduct can come about. They go to the only places where gay men can meet other men. And your support for that is on 225 of the record? Principally, yes. And it's also on pages 293, 294 of the administrative record. Okay. Thank both counsel for their argument. The case disargued will be submitted, I suppose.
judges: B. Fletcher, Berzon, Trager